## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**ELIZABETH THIBAUT**

**VERSUS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION**

**CIVIL ACTION**

**NO. 07-388-JVP-CN**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in chambers in Baton Rouge, Louisiana, September 17, 2008.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **ELIZABETH THIBAUT** | **CIVIL ACTION** |
| **VERSUS** | |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION** | **NO. 07-388-JVP-CN** |

## MAGISTRATE JUDGE'S REPORT

Plaintiff Elizabeth Thibaut seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act. In making that final decision, the Administrative Law Judge (ALJ) reached the fourth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that plaintiff could perform her past relevant work during the relevant period under consideration (Tr. 297-304).

## FACTS AND PROCEDURAL HISTORY

On April 30, 2002, plaintiff protectively filed her application for disability benefits. (Tr. 57-60.) In her application, plaintiff claimed that her inability to work began May 5, 1999, but later amended her application to a November 15, 2001 onset date. (Tr. 297,338.)[2] Plaintiff's claim was denied at the initial level and plaintiff requested a hearing before an

---

[1] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

[2] Plaintiff has asserted that her amended onset date was November 1, 2001, but also recognizes in her brief that the ALJ's relevant period began on November 15, 2001 (Tr. 289, 338.) *See*, Plaintiff's Brief (Plf's Br.) At p. 3. The evidence of record supports the November 15, 2001, alleged onset date (Tr. 297.) To support her basis for the amendment of her alleged disability onset date, plaintiff admits that prior to November 2001, she was a self-admitted alcoholic ((Tr. 300-01.) Drug and alcohol addiction are no longer a basis for an award of disability benefits. (Pub. L. No. 104-121 Sec. 105(a)(1); 105(b)(1); 20 C.F.R. § 404.1535.) The record shows that on or about November 10, 2001 plaintiff reportedly stopped abusing alcohol after she had an accident in her bathroom which resulted in her being hospitalized for a frontal temporal hematoma.(Tr. 146, 163-169.)

ALJ, which occurred on November 5, 2003. (Tr. 45-46, 51, 241.)  ALJ Michael S. Hertzig issued an adverse decision on March 9, 2004, denying disability (Tr. 26, 121.)  The Appeals Council declined jurisdiction and the decision was appealed to this Court under 42 U.S.C. § 405(g) (Civil Action no. 04-696-D-M2). The Commissioner sought a voluntary remand, which was granted on May 5, 2005, and the case was remanded for further development and a new decision. (Tr. 306.)

Pursuant to the remand order, ALJ Hertzig's decision was vacated and a new hearing was scheduled for October 2, 2006. (Tr. 417.)  In the interim, plaintiff filed a second application for disability on April 30, 2004.  Under this application, plaintiff was granted disability benefits under Title II of the Act commencing March 10, 2004. (Tr. 297.)  ALJ Lawrence T. Ragona, on October 27, 2006, issued a decision regarding plaintiff's first application for DIB (the April 30, 2002, application) finding that plaintiff was disabled commencing March 10, 2004, but not before that date. (Tr. 305.)[3]

The ALJ found that plaintiff met the insured status requirements through December 31, 2005, and that she has not engaged in substantial gainful activity since November 15, 2001. (Tr. 300.)  The plaintiff was found to have the severe impairments of degenerative disc disease of the cervical spine with radiculopathy, disorder of lumbar spine; alcohol abuse and depression. The ALJ found that none of plaintiff's impairments, either singly or in combination, met or medially equaled one of the listed impairments under Appendix 1 to

---

[3] The Court notes that the relevant period for plaintiff's 2002 DIB application runs from November 15, 2001 through March 9, 2004, the day before she was found disabled on her second DIB application.

3

Subpart P of Regulations No. 4. (Tr. 301.) The ALJ also found that while these impairments could be expected to produce plaintiff's alleged symptoms, her statements regarding intensity, persistence and limiting effects were not entirely credible. The ALJ, therefore, found that plaintiff had the residual functional capacity to perform light work, which is to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 302.) Under this RFC the ALJ found that plaintiff could perform her past relevant work as a nurse manager, both as actually performed and as generally required by employers throughout the national economy and was thus not disabled. (Tr. 304.)[4] The Appeals Council declined jurisdiction on April 14, 2007, and ALJ Ragona's decision became the final decision of the Commissioner, which decision is now before this Court.[5]

## ANALYSIS

Judicial review of a final decision of the Commissioner denying disability insurance benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the Commissioner's findings, and (2) whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether

---

[4] According to 20 C.F.R. §404.1565(a); and SSR 82-61, *Titles II and XVI; Past Relevant Work, the Particular Job or the Occupation as Generally Performed*, 1982 WL 31387 at 2, a claimant will be found to be not disabled when it is determined that she retains the residual functional capacity to perform: (1) the actual functional demands and job duties of a particular pas relevant job; or (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy.

[5] As of March 10, 2004, plaintiff had additional impairments of lightheadedness, fatigue and shortness of breath (Tr. 300.) The ALJ found that beginning on March 10, 2004, plaintiff's RFC deteriorated to a less than sedentary exertional level which would prevent her from the performance of even a full range of sedentary work and that the plaintiff's substance abuse disorder was not a contributing factor material to the determination of disability. (Tr. 303-305.) Therefore, plaintiff was disabled under the Act beginning on March 10, 2004, but not before that date. (Tr. 305.)

the Commissioner applied the proper legal standards.[6] In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor try the issues de novo, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. Id. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. Id. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. Id.

The burden of proof in disability administrative hearings rests predominately on the claimant, and toward that end, the claimant and the ALJ conduct a five-step analysis.[7] Only if the claimant proves that she is no longer able to work in her past relevant work, then, and only then, does the burden shift to the Commissioner to establish that the claimant nonetheless has the ability to engage in other substantial gainful activity.[8]

In the present case, plaintiff was found not disabled during the relevant period at step four of the sequential analysis because the ALJ found that she could perform her past relevant work as a nurse manager. Plaintiff asserts that the ALJ failed to fulfill his duty under SSR 82–62, to fully question the plaintiff and develop the record regarding the

---

[6] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

[7] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[8] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

physical and mental demands of her past relevant work. She goes on that the ALJ erred in summarily finding that she could return to her past work without considering the mental demands of such work given the documented evidence of anxiety, depression, difficulties with language deficits and short and long term memory loss.

Plaintiff argues that because the ALJ found that she experienced a "severe" impairment of depression, the ALJ, under SSR 82-62, could not simply conclude without rationale that a plaintiff can perform her past work. However, the ALJ's decision contains a comprehensive analysis of plaintiff's mental treatment and examinations. The Court is of the opinion that for plaintiff not to be capable of performing the mental demands of her past relevant work, the ALJ must first determine if plaintiff's impairment of depression reaches the standard for finding a "severe" impairment, which is based upon more than a slight abnormality (Tr. 298, ALJ properly referring to the standard.)[9] The Fifth Circuit has held that the presence or diagnosis of an impairment alone is not sufficient to establish a disability.[10] As argued by defendant and discussed by the ALJ, plaintiff's contention that she has functional limitations resulting from a diagnosis of depression is not supported by substantial evidence. The ALJ states in his decision that in assessing the severity of alleged mental impairments, he must use the specific analysis set forth in Section 404.1520a of the regulations and referred to as the "technique." This is a two-part analysis based on Listings

---

[9] Stone v. Heckler, 752 F.2d 1099, 1011 (5th Cir. 1985).

[10] Hames v. Heckler, 707 F.2d 162, 165 (5th Cir. 1983); *see also,* Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) (a diagnosis is not disabling per so; there must be a functional loss establishing an inability to engage in substantial gainful activity before disability occurs).

12.04 and 12.09 of Appendix 1. The ALJ must first consider the diagnostic characteristics of the impairment, and then the functional limitations resulting from the impairment.

The plaintiff underwent a neuropsychological evaluation on March 31, 2003 from Drew Gouvier, Ph.D. and Randee L. Bookish, M.A. (Tr. 196.) Plaintiff complained of experiencing memory and language deficits that worsen when she hurries or is under stress. However, the test results did not indicate a significant impairment with memory or language. The intellectual testing utilizing the Wechsler Abbreviated Scale of Intelligence revealed a high average intellectual quotient equal to or better than eighty-one percent of individuals her age. Plaintiff's memory testing scores revealed "mildly impaired" visual recall, and verbal memory performance ranged between low average to high average, with significantly better recall for information presented within a story versus word lists. Plaintiff also demonstrated average auditory working memory and good ability to alternate attention during cognitive tasks. (Tr. 196-199.) Mr. Bookish and Dr. Gouvier opined "In sum, the presence of Mrs. Thibaut's perceived decline in memory and language functioning is difficult to determine since there is no premorbid data for comparison.....however the results of testing do not indicate any clinically significant impairment with memory or language." (Tr. 199.) The impression from this evaluation was depression; alcohol dependence in remission; degenerative disc disease; alcoholic neuropathy of both feet; and history of head trauma. Further, plaintiff's GAF was 70,[11] which indicates a some mild symptoms or some difficulty

---

[11] A GAF score is a snap shot assessment for the current period in time, and is subject to major variations. *See Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)* a p. 33 (4th ed., text rev., 2000).

in social occupational, or school functioning, but generally functioning pretty well and has some meaningful interpersonal relationships.[12] (Tr. 196-199.)

On May 14, 2003, another consultive psychological examination was performed on plaintiff by Gareth Dutton, MA, and Phillip J. Brantley, Ph.D. (Tr. 229.) Plaintiff informed Dr. Brantley of her three year history of depression following a series of job losses, but admitted that her symptoms have improved in the past year with the use of the antidepressant medication Elavil (Tr. 229.)[13] Plaintiff also reported a history of excessive alcohol use beginning three years ago, but was only drinking three to four drinks/week, rather than ½ of 5th of liquor per day like she used to do. Plaintiff also stated in this evaluation that while she was experiencing anxiety in social situations related to vocabulary difficulties, she also admitted experiencing significant improvement in her social anxiety symptoms and vocabulary difficulties to the point that she no long feared social situations. (Tr. 230.) Dr. Brantley's diagnosis was major depressive disorder, recurrent, moderate; alcohol dependence, sustained full remission; and a prior history of social phobia. (Tr. 230.)

In support of her argument with respect to her short and long term memory loss and word finding difficulties, plaintiff offers the statements of Holly Galland, M.D. dated October 23, 2003, and December 31, 2003. Dr. Galland opines in October that, "Ms. Thibaut is a registered nurse. I feel that she is not able to perform routine nursing duties at this time."

---

[12] Id., at p. 34.

[13] Johnson v. Bowen, 864 F.2d 340, 348 (5th Cir. 1988); Taylor v. Bowen, 782 F.2d 1294, 1298 (5th Cir. 1986) (a medical condition that can be remedied by surgery or medication is not disabling.)

In December 2003 Dr. Galland writes: "Again, in my opinion , this woman is unable to return to any of her previous nursing duties." Dr. Galland is not a mental health professional, she is a staff physician at the Earl K. Long outpatient clinic. Dr. Galland did not list any functional limitations for her findings that plaintiff could not perform her past relevant work as a nurse, nor are they consistent with her own outpatient records. Dr. Galland's records indicate a positive response to psychotropic mediation management and a normal neurological evaluation. In February 2002, Dr. Galland notes that plaintiff feels better and is thinking of getting a job. (Tr. 193, 206-207). Further, the Fifth Circuit has held that declarations stating that a claimant is disabled or unable to work are not determinative because resolution of the ultimate issue regarding disability is reserved by statute to the Commissioner.[14] Therefore, her opinion relative to plaintiff's mental status was given little weight by the ALJ.

      The ALJ then assessed plaintiff's functioning ability. In doing so, the ALJ looked to Part B of Listing 12.04.[15] While the ALJ found that plaintiff suffered from depression and alcohol abuse which supported a finding that her impairments had more than a minimal adverse effect on her ability to perform the basic activities of work, he also found that without considering the alcohol abuse plaintiff had only mild restrictions in activities of daily living, mild difficulties in maintain social functions and moderate difficulties in maintaining

---

[14] Tamez v. Sullivan, 888 F.2d 334, 336 n.1 (5th Cir. 1989); Barajas v. Heckler, 738 F.2d 641, 645 (5th Cir. 1984); see also, 20 C.F.R. § 404.1527(e) (medical source opinions on issues reserved to the Commissioner are improper).

[15] There is also a part C in listing 12.04. The ALJ found and plaintiff does not dispute, that there is no evidence that she met any of the listed criteria of Part C.

concentration, persistence and pace; and no episodes of decompensation. (Tr. 301.)[16] The record indicates that plaintiff's alcohol abuse is in remission and never resulted in any functional limitations during the relevant period under consideration. Plaintiff's own testimony is consistent with this finding. (Tr. 273-276, 301.) As defendant points out, logically, if an impairment is in remission, it would not be expected to result in functional limitations.[17] Therefore, the ALJ found that without alcohol abuse, the plaintiff's mental impairment is not severe as evaluated under Parts B and C of 12.04, and that plaintiff was able to perform her past relevant work as a nurse manager, "as long as alcohol abuse is not considered." (Tr. 302, 304.)

Plaintiff argues that this finding is not supported by substantial evidence and that the ALJ did not discuss the functional demands of her past relevant work.[18] The record shows that plaintiff worked as a nurse manager from May 1988 through December 1990, December 1994 through May 1996 and for a time beginning June 1997 and thereafter. (Tr. 100, 102, 106.) During these periods plaintiff completed a Work History for wherein she stated that she never had to lift more than 10 pounds, never had to walk, sit, stand, or climb more than

---

[16] In determining the severity of a claimant's mental impairments, the Agency has identified four broad areas where the degree of functional limitation is to be rated including activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation 20 C.F.R. § 404.1520a(c)(3). The first three broad areas of functioning are rated as either none, mild, moderate and marked. *See*, 20 C.F.R. § 404.1520a(c)(4). The fourth area (episodes of decompensation) is rated on a numerical scale of none to "four or more." Ratings of "none" or "mild" in the first three areas, and "none" in the fourth category generally constitutes a non-severe mental impairment, ". . . unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities" *See*, 20 C.F.R. § 404.1520a(d)(1).

[17] *See*, McNatt v. Barnhart, 464 F. Supp. 2d 358, 371 (D. Del. 2006) (because the ALJ found that claimant's poly-substance abuse was in remission, a reasonable mind could conclude that substance abuse no longer causes any functional limitations.)

[18] Plf's brief, p. 6-7.

three house during an eight-hour workday; she spent the majority of her time supervising people; and had to use office equipment, technical or knowledge skills and write reports. (Tr. 102, 106.) This would be considered light exertional work. With regards to the demands of her past relevant work as a nurse manager (or nurse supervisor), the Dictionary of Occupational Titles (DOT) classifies this job as light work and skilled (DOT § 075.167-010, 1991 WL 646747).[19] The record shows that the vocational expert from the previous hearing identified plaintiff's past relevant work as a nurse manager as sedentary work. (Tr. 277-279, 304.) Using this description from the DOT, and the testimony for the VE at the prior hearing, plaintiff's past relevant work would not be precluded by the ALJ's RFC to perform light work. (Tr. 302.)

Plaintiff argues that the ALJ erred in not discussing every factor under SSR 82-62, because of plaintiff's mental limitations and her word and language difficulties. She also points out that SSR 82-62 states that:

> For a claim involving a **mental/emotional impairment**, care must be taken to gain a precise description of the particular job duties which are likely to produce tension and anxiety, e.g., speed, precision, complexity of tasks, independent judgments, working with other people, etc., in order to determine if the claimant's **mental impairment** is compatible with the performance of such work. (Emphasis supplied by the Court)

It has already been discussed that there is evidence in the record that supports the ALJ's determination that plaintiff does not suffer from severe impairments of depression or language and word difficulties. Still, plaintiff argues that had the ALJ conducted an analysis

---

[19] Both Plaintiff and Defendant refer to the classification of Head Nurse. While defendant's brief states that the strength of this work is sedentary and skilled, the DOT § 075.137-014, 1991 WL 646746 states that the strength is "medium work" and plaintiff's RFC precludes her from performing this job classification.

11

of the job description he would have found that she could not perform her past relevant work as a nurse manager. The Court would disagree in that the ALJ had all the information necessary to make this determination before him in the record. The Court would point out that SSR 82-62 also provides that:

> Adequate documentation of past work includes factual information about those work demand which have a bearing on the medically established limitations. Detailed information about strength, endurance, manipulative ability, mental demands and other job requirements must be obtained as appropriate. **This information will be derived from a detailed description of the work obtained from the claimant, employer, or other informed source. Information concerning job titles, dates work was performed, rate of compensation, tools and machines used, knowledge required, the extent of supervision and independent judgment required, and a description of tasks and responsibilities will permit a judgment as to the skill level and the current relevance of the individual's work experience**.[20]

Plaintiff provided all of this information in her "Work History Report" (Tr. 100-106), information that plaintiff does not dispute. The ALJ found that plaintiff's past relevant work as a nurse manager would be considered at least light exertional work and that the job was a supervisory job. Further the ALJ points out that plaintiff's own description of her job was that of light exertional capacity. (Tr. 304 see, Work History Report.) Plaintiff avers that her

---

[20] SSR 82-62, 1975-1982 Soc.Sec.Rep.Serv. 809, 1982 WL 31386 (S.S.A.)

job resembles the job of a registered nurse (head), which, as stated above, would indeed be medium work. However, plaintiff's description of her nurse manager position was that it was more like a nurse supervisory, which the DOT considers "light work."[21] Further, the description of duties as provided by plaintiff do not meet the DOT specifications for "head nurse."[22] Plaintiff does not dispute any other finding by the ALJ, nor does she provide the Court with any evidence to support her argument that plaintiff cannot perform her past relevant work.

Therefore, while the ALJ did not specifically discuss the demands of plaintiff's past relevant work, as argued by plaintiff, the Court finds that there is sufficient evidence in the record to support that a nurse manager position is light to sedentary work and sufficient evidence to support the ALJ's RFC finding that plaintiff is capable of performing it. Plaintiff has not proved otherwise.

Further, the Court finds that the ALJ followed the proper legal standards in making this determination.

---

[21] *See*, DICOT 075.167-010, 1991 WL 646747, Nurse, Supervisor.

[22] *See*, DICOT 075.137-014, 1991 WL 646746, Head Nurse.

## RECOMMENDATION

Accordingly, it is recommended that the Commissioner's decision be affirmed and that the plaintiff's appeal be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, September 17, 2008.

**MAGISTRATE JUDGE CHRISTINE NOLAND**